Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| FELÍCITA RODRÍGUEZ HERNÁNDEZ Y OTROS<br><br>Peticionaria<br><br>V.<br><br>DR. JOSÉ CEBOLLERO MARCUCCI Y OTROS<br><br>Recurrido | KLCE202401133 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm. GM2019CV00306 (SALÓN 301)<br><br>Sobre: IMPERICIA MÉDICA |
|---|---|---|

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Grana Martínez, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 22 de noviembre de 2024.

**I.**

El caso comenzó con la presentación de una *Demanda* por una alegada mala práctica y negligencia en el tratamiento y cuidado médico de la señora Ivette Rodríguez Hernández, en adelante la señora Ivette Rodríguez, la cual le causó la muerte.[1] La *Demanda* fue presentada por la hermana, Felícita Rodríguez Hernández y su madre Bertina Rodríguez, en adelante las peticionarias. En la misma alegaron que el Hospital Menonita de Guayama, Inc., en adelante el Hospital, el Doctor José Cebollero Marcucci, en adelante Dr. Cebollero, SIMED y otras aseguradoras nombradas por nombre ficticio, eran responsables de la muerte de la señora Ivette Rodríguez.

En dicha *Demanda* argumentaron que la señora Ivette Rodríguez fue sometida a una cirugía de remoción de adherencias intestinales llevada a cabo por el Dr. Cebollero y que éste perforó los intestinos durante el procedimiento. Alegan que dicha intervención y perforación ocasionó un liqueo de fluidos intestinales que, a su vez, ocasionó una infección y la formación de absceso que reventó. En consecuencia, requirió que se le efectuara una colostomía a la señora Ivette Rodríguez. Las peticionarias

---

[1] Apéndice 2 de la *Petición de Certiorari*, págs. 13-20.

Número Identificador

RES2024_____

entienden que la negligencia en el tratamiento médico realizado por el Dr. Cebollero llevó a que la señora Ivette Rodríguez sufriera una deficiencia nutricional que le causó otras alteraciones neurológicas, las cuales empeoraron debido al tratamiento negligente del Hospital en el manejo nutricional y de los medicamentos administrados.

Por los hechos alegados solicitaron que se les ordenara a los recurridos a indemnizar de manera solidaria a las demandantes con una suma de $2,000,000.00, por los graves daños sufridos a la señora Ivette Rodríguez y la pérdida de vida; $300,000.00, para la señora Felícita Rodríguez Hernández, por las angustias mentales y daños morales causados por la muerte de su hermana; y $400,000.00, para la señora Bertina Rodríguez, por las angustias mentales y daños morales causados por la muerte de su hija. Además, solicitaron el pago de las costas, gastos, intereses y honorarios de abogado.

El 8 de julio de 2019, el Hospital presentó su *Contestación a Demanda,* en la que reconocieron las intervenciones efectuadas a la señora Ivette Rodríguez.[2] Sin embargo, negaron todas las alegaciones de negligencia en su contra y que el Dr. Cebollero fuese empleado del Hospital, aseverando que la relación entre éstos era meramente incidental, que el Dr. Cebollero solo disfruta de privilegios en el hospital. Añadieron que las actuaciones de su personal no fueron la causa próxima del daño alegado y que el tratamiento ofrecido fue de conformidad con los requisitos y estándares médicos reconocidos en la profesión médica.

Por su parte, el Dr. Cebollero presentó su *Contestación a Demanda*, donde negaba toda alegación de negligencia en su contra.[3] Así pues, alegó que el tratamiento ofrecido a la señora Ivette Rodríguez se ajustó al estado de conocimiento de la ciencia en las prácticas prevalecientes de la medicina, satisfaciendo las exigencias generalmente reconocidas por la profesión médica para el tipo de condición que ésta presentaba.

---

[2] Apéndice 3 de la *Petición de Certiorari,* págs. 21-37.
[3] Apéndice 4 de la *Petición de Certiorari,* págs. 38-48.

El 10 de septiembre de 2019, a solicitud de las peticionarias, el Tribunal de Primera Instancia, en adelante TPI, dictó *Sentencia Parcial* concediendo el desistimiento con perjuicio de la demanda en contra de SIMED.[4] A su vez, el mismo foro dictó *Sentencia Parcial* desestimando la *Demanda,* con perjuicio y por falta de jurisdicción, en contra de Puerto Rico Medical Defense Company.[5]

Así las cosas, el 16 de febrero de 2024, el Hospital presentó *Moción de Sentencia Sumaria,* en la cual alegaron que del descubrimiento de prueba se demostró que el Hospital no responde por la negligencia del Dr. Cebollero.[6] Según el Hospital, las actuaciones u omisiones del personal de enfermería no contribuyeron de manera alguna ni le causaron la muerte a la señora Ivette Rodríguez. Además, que no fue el Hospital quien escogió al Dr. Cebollero para que le ofreciera el tratamiento recibido por ésta. No obstante, el TPI declaró no ha lugar la *Moción de Sentencia Sumaria* por existir hechos materiales en controversia.[7]

Inconforme, el Hospital presentó un recurso de certiorari ante este Tribunal, en el que alega que:

> **Erró crasamente el Tribunal de Instancia al no desestimar la acción contra el Hospital basada en la alegada negligencia del codemandado Dr. Cebollero bajo la doctrina de *Márquez Vega*, debido a que la señora Ivette Rodríguez era una paciente privada de dicho doctor.**

> **Erró el Tribunal de Instancia al no resolver que no existe una causa de acción bajo el Artículo 1803 del Código Civil de Puerto Rico en contra del Hospital, ya que la prueba pericial de la parte demandante establece que las alegadas actuaciones negligentes del personal de enfermería no fueron la causa próxima de los alegados daños reclamados en la demanda y tampoco existe prueba sobre ellas.**

---

[4] Apéndice 5 de la *Petición de Certiorari*, págs. 49-50.

[5] Apéndice 6 de la *Petición de Certiorari*, págs. 51-52.

[6] Apéndice 8 de la *Petición de Certiorari*, págs. 55-187.

[7] Apéndice 1 de la *Petición de Certiorari*, págs. 1-12. (Advertimos que la determinación de hechos número 11 de la *Resolución* recurrida, se escribió con la fecha incorrecta en que a la señora Ivette Rodríguez se le realizó un segundo CT Scan abdominopélvico que reveló un liqueo o fístula. Esta aparece como "25 de febrero de **2028**", cuando debió ser "25 de febrero de **2018**".

**II.**

**A.**

El recurso de certiorari está regulado por nuestro ordenamiento procesal civil. En lo relacionado al referido recurso, es sabido que se define como un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las decisiones de un tribunal inferior. 32 LPRA sec. 3491; *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *IG Builders et al v. BBVAPR,* 185 DPR 307, 337 (2012). En esencia, este mecanismo procesal permite al foro revisor corregir algún error cometido por el tribunal de menor jerarquía. *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016). El referido recurso es uno de carácter discrecional. Esta discreción, ha sido definida jurisprudencialmente "como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

El primero de estos límites es la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V. Esta dispone en lo pertinente que el recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Superados los criterios de la Regla 52.1 de Procedimiento Civil, venimos llamados a ejercer nuestro criterio sujeto a lo dispuesto en el Reglamento del Tribunal de Apelaciones mediante la Regla 40, 4 LPRA Ap. XXII-B. Esta dispone que el tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de los hechos planteada es la más indicada para analizar el problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40.

En cuanto a la facultad discrecional de denegar o expedir el auto solicitado, el tribunal, de forma comedida, puede inclinarse a expedir el recurso y adjudicarlo en sus méritos. Al tomar la referida decisión, el foro revisor asume jurisdicción sobre el asunto expuesto ante su consideración. Así pues, revisa e interviene con las decisiones del foro recurrido, para auscultar que estas sean justas y conforme a la normativa aplicable. *Negrón v. Srio. de Justicia*, supra.

Finalmente, en cuanto a la denegatoria de un recurso de certiorari por un tribunal de apelaciones, el Tribunal Supremo de Puerto Rico ha destacado que dicha acción no prejuzga los méritos del caso o la cuestión planteada, pudiendo ello ser reproducido nuevamente mediante el correspondiente

recurso de apelación. *García v. Padró*, 165 DPR 324, 336 (2005). De esta forma, la parte afectada por la decisión que finalmente tome el Tribunal de Primera Instancia no queda privada de la oportunidad de hacer ante el foro apelativo los planteamientos que entienda procedentes una vez se resuelva el pleito en el foro primario. *Íd*; *Núñez Borges v. Pauneto Rivera*, 130 DPR 749, 755-756 (1992).

**B.**

El propósito cardinal de la sentencia sumaria es proveer una solución justa, rápida y económica para los litigios de naturaleza civil en los cuales no existe un conflicto o controversia genuina de hechos materiales. *Pérez Vargas v. Office Depot,* 203 DPR 687, 699 (2019); *Oriental Bank v. Perapi et al,* 192 DPR 7, 25 (2014); *Const. José Carro v. Mun. de Dorado,* 186 DPR 113, 128 (2012). La sentencia sumaria es el vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo. *Pérez Vargas v. Office Depot,* supra, pág. 699.

Conforme a la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, la sentencia sumaria procede si las alegaciones, deposiciones y admisiones, declaraciones juradas y alguna otra evidencia, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material. Además, es necesario que el derecho justifique la sentencia sumaria. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018).

La Regla 36.4 Procedimiento Civil y su jurisprudencia interpretativa aplican cuando el foro primario no decide el pleito en virtud de una sentencia sumaria. Esta regla delimita las instancias en las que el tribunal estará obligado a resolver la moción de sentencia sumaria, **mediante una determinación que incluya los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertibles.** La aplicación de la Regla 36.3, *supra*, procede cuando: (1) no se dicta sentencia sumaria sobre la totalidad del pleito, (2) no se conceda todo el remedio

solicitado y (3) se deniega la moción de sentencia sumaria presentada. Estas tres instancias conllevan la celebración de un juicio en su fondo. El tribunal deberá consignar los hechos sobre los cuales no existe controversia, puesto que será innecesario pasar prueba sobre estos durante el juicio. *Pérez Vargas v. Office Depot,* supra, págs. 696-697.

El Tribunal Supremo de Puerto Rico estableció en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100 (2015), el estándar específico que debe utilizar el Tribunal de Apelaciones al momento de revisar denegatorias o concesiones de Mociones de Sentencia Sumaria. El ámbito de discreción del foro apelativo intermedio en casos de revisión de Sentencia Sumaria está limitado en dos aspectos. El primero consiste en que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del tribunal de instancia. **El segundo limita la facultad del Tribunal de Apelaciones a revisar, si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales. No obstante, no puede adjudicarlos.** *Meléndez González et al. v. M. Cuebas,* supra, págs. 115, 117-120.

Al revisar una sentencia sumaria, el Tribunal de Apelaciones debe (1) examinar de novo el expediente y aplicar los criterios de la Regla 36, *supra*, y la jurisprudencia que exige al foro primario, (2) revisar que tanto la moción de sentencia sumaria como la oposición cumplan con los requisitos de forma de la Regla 36, (3) revisar si en realidad **existen hechos materiales en controversia y de haberlos, cumplir con las exigencias de la Regla 36.4 de exponer correctamente los hechos materiales controvertidos** y (4) **de encontrar que los hechos materiales están incontrovertidos** revisar de novo si el TPI aplicó el derecho correctamente. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

**III.**

El Hospital solicita que pasemos juicio sobre la denegatoria del TPI a desestimar la reclamación en su contra ante una moción de carácter dispositivo. No obstante, luego de examinar detenidamente el expediente del

caso y los parámetros de la Regla 40 del Reglamento del Tribunal de Apelaciones, no hemos encontramos razón alguna en el expediente ante nuestra consideración para creer que el foro primario abusó de su discreción. Como tampoco existe motivo alguno para no honrar la deferencia que merece su negativa a dictar sentencia sumaria, luego de haber concluido que existe controversia sobre hechos esenciales relacionados al manejo de la línea central de Doña Ivette y el proceso de hiperalimentación, según delineados mediante los hechos en controversia 1 a 5.

La resolución recurrida cumple a cabalidad con los requisitos de la Regla 36, *supra,* vigente, ya que discute detalladamente los hechos esenciales y pertinentes sobre los cuales no existe controversia, así como los hechos esenciales y pertinentes que fueron controvertidos y que impiden que se dicte sentencia sumaria. Además, hace referencia específica a la evidencia, a base de la cual el TPI determinó los hechos relevantes y pertinentes que fueron controvertidos y los que no están en controversia.

Nos parece que nuestra intervención en este momento ocasionaría una fragmentación de los procedimientos y una dilación innecesaria de este caso en el que, como adelantamos, no atisbamos un abuso de discreción por el foro recurrido.

Luego de examinar detenidamente el expediente del presente caso, y conforme a la discreción que ostentamos para expedir un recurso de certiorari, declinamos ejercer la misma ante la existencia de hechos en controversia. Así, pues, denegamos la expedición de dicho recurso.

**IV.**

Por lo antes expuesto se deniega la expedición del auto de certiorari.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

<br>

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones